

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40603-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT T. TARVER, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, C.J. — Robert Tarver, a former Department of Children, Youth and Families (the Department) caseworker, was charged with several crimes after having sexual contact with a mother he was assigned to investigate. Following a bench trial, he was acquitted of extortion but convicted of perjury and receiving unlawful compensation. On appeal, he challenges only his conviction for receiving unlawful compensation. He contends the trial court misconstrued RCW 9A.68.030, which forbids a public servant from requesting or accepting "compensation" for advice or assistance in preparing a "transaction" regarding which the public servant has official discretion to exercise. Specifically, he argues that sexual contact is not "compensation," and a "transaction" does not include parent-child visitations or a dependency case. The State argues the trial court properly interpreted the statute in accordance with the legislature's intent.

We conclude that the superior court did not err in its interpretation of the statute and affirm.

BACKGROUND

The trial court entered detailed findings of fact following a bench trial. Tarver does not assign error to any of these findings, and they are therefore verities on appeal.[1] *State v. Hartman*, 27 Wn. App. 2d 952, 965, 534 P.3d 423 (2023).

Robert Tarver was employed as a caseworker with Washington State Child Protective Services (CPS). R.J. resided in Colfax with seven of her children and B.C., her boyfriend and the father of R.J.'s three youngest children.

In July 2020, CPS received an allegation that B.C. had physically abused one of R.J.'s children. On July 6, all of the children were removed from the home pursuant to a court order. The Department placed the three youngest children with their maternal grandmother who lived a block from R.J.'s house in Colfax. The Department filed a dependency petition seeking dependency over all seven of R.J.'s children, alleging that the children lacked a parent capable of caring for them.

On July 9, a family team decision-making meeting was held at the Department's Colfax office to discuss the care and placement of the children and services to be

---

[1] Because Tarver does not challenge the court's factual findings, and his argument largely pertains to the legal interpretation of language used in the statute, we truncate the factual background accordingly.

provided to R.J. Those in attendance included R.J., R.J.'s attorney, R.J.'s mother, Tarver, and Tarver's supervisor. During this meeting, Tarver was tasked with assisting R.J. in procuring a domestic violence protection order against B.C. to protect R.J. and her children. Tarver was also tasked with arranging visitation between R.J. and her three youngest children. Following this meeting, R.J.'s attorney prepared the petition for a protective order and sent it to Tarver. Tarver then met R.J. at the courthouse and presented the petition to the court.

After the court signed the order, Tarver told R.J. that he would accompany her home for her safety. When Tarver and R.J. first arrived at R.J.'s house, R.J.'s brother was present. R.J.'s brother lived with his and R.J.'s mother, but when the Department placed the children in her care he was told to leave until a background check could be completed. Nevertheless, shortly after arriving at R.J.'s house, Tarver told the brother he could return to his mother's house. Although the inconsistent directive confused the brother, he gathered his items and returned to his mother's home. The court later found that "Tarver's directions to [the brother] entailed an exercise of discretion as a CPS caseworker." Clerk's Papers (CP) at 116 (Finding of Fact (FF) 29).

Tarver stayed at R.J.'s house from 5:00 p.m. on July 9 until 12:05 a.m. on July 10. While Tarver initially told R.J. that he was off the clock and they should not discuss the dependency case, he spoke about the case and R.J.'s children multiple times throughout the evening. Tarver told R.J. he was amazed by the amount of information he had

located regarding her history, dating back to the birth of her first child. He believed he knew her well enough to diagnose her. He also indicated he was considering what services the Department would provide.

Tarver and R.J. had sexual contact throughout the evening. During this time, the two continued to talk about R.J.'s children and the children's fathers. Around midnight, Tarver announced that he was going to return to his office and work on R.J.'s case. He told R.J. that he would arrange for R.J.'s visitation with her three children the following day. "He spoke in a manner and tone signifying his being in the best position within [the Department] to facilitate the return of the children to R.J." CP at 121 (FF 58).

On July 10, Tarver telephoned R.J. and told her she could visit her children. "Contrary to practice, Tarver did not arrange for a visitation supervisor." CP at 122 (FF 63).

A shelter care hearing began on July 13. One purpose of the hearing was to decide temporary placement of the children including the option of in-home placement. If the children were not returned home, the court would also decide visitation.

Tarver testified at this hearing as the assigned case worker. He testified that in his opinion the children would not be safe with R.J. even if B.C. was no longer present in the home. He recommended services including a chemical dependency assessment, domestic violence victim services, mental health services, and random alcohol testing. Tarver was

4

still testifying at the end of the day, and the hearing was continued for one week due to a scheduling issue.

On July 14, with the assistance of her attorney, R.J. reported the sexual contact with Tarver to the Colfax police.

When the shelter care hearing resumed on July 20, Tarver was recalled as a witness. He admitted that he was no longer assigned to R.J.'s case. R.J.'s attorney then asked Tarver whether he had been removed from the case because he was being investigated for "having sex with [R.J.] in exchange for helping her on her CP[S] case." CP 123-24 (FF 70). After the court overruled the State's objection, Tarver denied that he had been to R.J.'s house on July 9. He also denied bringing alcohol to R.J.'s house in his work vehicle. At Tarver's later trial on the criminal charges, the trial court found that Tarver's denials were false and the falsehoods were material because truthful answers would have affected Tarver's credibility at the shelter care hearing.

The State charged Tarver with receiving unlawful compensation, second degree extortion, and first degree perjury.

At the bench trial on the criminal charges, the State called R.J., who testified consistently with the facts above. She also testified that she felt "uncomfortable" numerous times throughout the encounter. When asked how the first instance of oral sex occurred, R.J. replied, "Because he said that's what he wanted." Rep. of Proc. at 180.

5

Following the bench trial, the court found Tarver guilty of first degree perjury and the crime of receiving unlawful compensation with sexual motivation. In addition to the above findings, the court found:

> As a Child Protective Services caseworker assigned to the dependency case of R.J.'s children, Robert Tarver possessed discretion with regard to arranging the dates, times, lengths, and frequency of visitation between R.J. and her removed children. The CPS caseworker also decides and has discretion as to whether a parent's visitation will be supervised.

CP at 121 (FF 61).

> The superior court has the ultimate authority on determining whether children removed from home will be returned home and, if not returned home, the extent of visitation with a parent. As a Child Protective Services caseworker assigned to the dependency case of R.J.'s children, Robert Tarver advised the superior court as to whether R.J.'s children should be returned to their home with R.J. and what, if any visitation, should occur. In advising the court, Tarver exercised discretion.

CP at 121-22 (FF 62).

With respect to receiving unlawful compensation, the court concluded:

> On July 9, 2024, Robert Tarver, being a public servant, requested and accepted sexual contact from R.J. and such contact was compensation within the meaning of RCW 9A.68.030(1)(a).

CP at 126 (Conclusion of Law (CL) 3).

Tarver appeals.

## ANALYSIS

Tarver argues the trial court erred by convicting him of receiving unlawful compensation based on an erroneous interpretation of RCW 9A.68.030. Specifically, he

contends that "compensation" does not include sexual acts and that "transaction" does not include parent-child visitation or a dependency case. We address these arguments by first interpreting the statute to determine the applicable definitions, and then we assess whether the evidence was sufficient to support a conviction using those definitions.

*A. Statutory Interpretation*

Matters of statutory interpretation are reviewed de novo. *State v. B.O.J.*, 194 Wn.2d 314, 323, 449 P.3d 1006 (2019). Our primary duty in statutory interpretation is to ascertain and carry out the legislature's intent. *Id.* To discern legislative intent, we consider the plain language of the statute; if the plain language is unambiguous, our inquiry ends. *Id.* The ordinary meaning of a statute is considered in context with "'related statutory provisions, the entire statute, and related statutes.'" *State v. Morgan*, 4 Wn.3d 261, 266, 562 P.3d 360 (2025) (quoting *AURC III, LLC v. Point Ruston Phase II, LLC*, 3 Wn.3d 80, 87, 546 P.3d 385 (2024)). "A contextual analysis includes reading the statute as a whole, applying grammatical conventions, and giving meaning to each word." *State v. Elwell*, 17 Wn. App. 2d 367, 370, 486 P.3d 152 (2021).

"'Legislative definitions included in the statute are controlling, but in the absence of a statutory definition this court will give the term its plain and ordinary meaning ascertained from a standard dictionary.'" *Id*. (quoting *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002)). When the legislature uses two different terms, we presume the difference was purposeful. *Royal Oaks Country Club v. Dep't of Revenue*, 2 Wn.3d 562,

7

571, 541 P.3d 336 (2024). This approach requires examining not just isolated provisions but also related statutes to understand the legislature's overall intent. *Seto v. Am. Elevator, Inc.*, 159 Wn.2d 767, 773-74, 154 P.3d 189 (2007). The presumption that different terms have different meanings helps courts fulfill their duty to construe each part of a statute in connection with every other part. *State v. Keller*, 98 Wn. App. 381, 384, 990 P.2d 423 (1999).

The relevant criminal statute reads:

(1) A person is guilty of receiving or granting unlawful compensation if:

(a) Being a public servant, he or she requests, accepts, or agrees to accept *compensation for* advice or other assistance in *preparing a bill, contract, claim, or transaction* regarding which he or she knows he or she is likely to have an official discretion to exercise.

RCW 9A.68.030 (emphasis added).

In this case, the issue is whether "compensation" encompasses sexual contact and whether "transaction" includes a dependency case and visitation with one's child.

*B. Compensation*

The parties agree the term "compensation" as used in RCW 9A.68.030 is not ambiguous. Nevertheless, they disagree as to whether its definition encompasses sexual contact.

"Compensation" is not defined in the statute; therefore, we turn to the ordinary dictionary definition. *See Elwell*, 17 Wn. App. 2d at 370. "Compensation" means "the

act or action of making up, making good, or counterbalancing **:** rendering equal **:** . . . something that constitutes an equivalent or recompense." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 463 (1993). The term neither specifies nor limits the instrument used to affect the exchange. As such, compensation can be conceivably achieved in an infinite number of ways—including sexual contact—so long as its function is to make good or counterbalance.

Tarver argues the term "compensation" does not include sexual favors. In support of this position, he points to other statutes in the same chapter. While acknowledging that chapter 9A.68 RCW uses two terms, compensation and pecuniary benefit, Tarver argues the terms are used synonymously in RCW 9A.68.020 and therefore must be synonymous throughout the chapter. We disagree with this logic.

For context, we consider related statutes. Chapter 9A.68 RCW governs "Bribery and Corrupt Influence" and establishes six crimes: bribery (.010); requesting unlawful compensation (.020); receiving or granting unlawful compensation (.030); trading in public office (.040); trading in special influence (.050); and commercial bribery (.060). All of these offenses except RCW 9A.68.030 concern offering, requesting, accepting, or conferring a "pecuniary benefit." Whereas RCW 9A.68.030—receiving or granting unlawful compensation—uses the undefined term "compensation."

The term "compensation" is broader than "pecuniary benefit." "'Pecuniary benefit' means any gain or advantage in the form of money, property, commercial

9

interest, or anything else the primary significance of which is *economic* gain." RCW

9A.04.110(16) (emphasis added). Whereas the definition of compensation is not limited

to an economic or financial exchange. While compensation might include something of

pecuniary value, nothing in its ordinary meaning limits compensation to an economic

benefit. Instead, the definition of compensation, along with the context in which the

word is used in RCW 9A.68.030(1)(a), focuses on whether the thing received functioned

as remuneration.

Tarver is correct that another statute, RCW 9A.68.020, employs both terms:

> A public servant is guilty of requesting *unlawful compensation* if he or she
> requests a *pecuniary benefit for the performance of an official action*
> knowing that he or she is required to perform that action without
> *compensation* or at a level of *compensation* lower than that requested.

(Emphasis added.) However, Tarver is incorrect that the two terms are used

synonymously in RCW 9A.68.020. Instead, the different terms have different meanings.

The statute prohibits requesting a pecuniary benefit, one specific type of compensation.

Thus, his argument that compensation and pecuniary benefit are used synonymously

throughout the chapter fails. In short, we conclude compensation and pecuniary benefit

are not interchangeable or synonymous.

Tarver urges us not to read sexual contact into the statute, arguing *State v.*

*Stockton*[2] disallows such a broad interpretation. However, Tarver's reliance on *Stockton*

---

[2] 97 Wn.2d 528, 647 P.2d 21 (1982).

is misplaced. The *Stockton* court considered whether sexual favors constituted a "service" within the meaning of the extortion statute. 97 Wn.2d at 530. The term "services" was defined in the statute and included a nonexhaustive list of examples. *Id.* The court applied the rule of "ejusdem generis"—when a list uses both specific and general terms, the general terms are restricted to mean only items similar to those designated by specific terms. *Id.* at 532. It noted that the "kinds of services listed in the statute are those for which compensation is usually received" and concluded the statute "thus contemplates only those kinds of services and not the sexual favors which defendant was asking to be freely given to him."[3] *Id.* at 532-33.

Here, the relevant statute does not define compensation, nor does it provide a list of examples. As such, the *Stockton* court's application of ejusdem generis and corresponding analysis is inapposite.

We hold that the trial court did not err in concluding that compensation as used in RCW 9A.68.030(1)(a) includes sexual contact.

*C. Transaction*

The parties also agree the term "transaction" as used in RCW 9A.68.030 is not ambiguous but disagree as to whether its definition encompasses a visit between a parent and child or a dependency case.

---

[3] The legislature subsequently amended the definition of extortion, which now "specifically includes sexual favors." RCW 9A.56.110.

11

As noted above, the crime of receiving unlawful compensation punishes a public

servant who requests or accepts "compensation for advice or other assistance in preparing

a bill, contract, claim, or transaction regarding which he or she knows he or she is likely

to have an official discretion to exercise." RCW 9A.68.030(1)(a). "Transaction" is not

defined in the statute; therefore, we turn to the ordinary dictionary definition. *See Elwell*,

17 Wn. App. 2d at 370. A "transaction" is "a communicative action or activity involving

two parties or two things reciprocally affecting or influencing each other."[4] WEBSTER'S

THIRD NEW INTERNATIONAL DICTIONARY 2425 (1993).

The trial court held that "transaction" as used in the statute was a broad term. CP

at 126-27 (CL 8). The court concluded that there were two transactions: the dependency

case itself and the visitation involving R.J. and her children. CP at 127 (CL 9). The court

noted that the dependency case was "a communicative action or activity involving two

parties or two things that reciprocally affect or influence each other." CP at 127 (CL 9).

The court then concluded that Tarver had discretion to influence the dependency case by

deciding the specific details of R.J.'s visitation with her children and providing the

superior court with his opinion of whether the children should be returned to R.J.

We agree with the trial court that the dependency action in this case qualifies as a

transaction as used in RCW 9A.68.030(1)(a). Here, the dependency action filed by the

---

[4] The trial court adopted this definition but incorrectly attributed it to *Black's Law Dictionary*.

State was a communicative activity that involved and reciprocally affected the children (through the State) and R.J. Tarver, as a public servant, advised and assisted in preparing this transaction by providing testimony intended to influence the ultimate decision-maker and exercising discretional authority to determine the terms of visitation.

Despite claiming that the plain language of RCW 9A.68.030(1)(a) is unambiguous, Tarver argues that the statutory canon of ejusdem generis should guide our analysis. He challenges the superior court's broad interpretation of transaction and contends that, under the canon of ejusdem generis, the term should be limited to financial transactions similar to a bill, claim, or contract. He supports his position by relying on *State v. Clark*[5] where the court applied ejusdem generis to RCW 9A.68.030 and determined that enforcement of the law was not a transaction. Tarver argues that parent-child visitation resembles enforcement of the law, which is not a transaction under *Clark*. He contends no rational reason differentiates a police officer enforcing the law and a social worker facilitating visitation. We disagree.

"'The ejusdem generis rule requires that general terms appearing in a statute in connection with specific terms are to be given meaning and effect only to the extent that the general terms suggest items similar to those designated by the specific terms.'" *Stockton*, 97 Wn.2d at 532 (quoting *Dean v. McFarland*, 81 Wn.2d 215, 221,

---

[5] 34 Wn. App. 173, 659 P.2d 554 (1983).

13

500 P.2d 1244 (1972). "Courts apply the doctrine only when a statute is ambiguous and contains the following characteristics: a) an enumeration of specific words that b) suggest a class, c) which is not exhausted by the enumeration, and d) is followed by a general reference." *Muckleshoot Indian Tribe v. Dep't of Ecology*, 112 Wn. App. 712, 726, 50 P.3d 668 (2002).

In *Clark*, the defendant owned a business being investigated for prostitution activities. 34 Wn. App. at 175. She was charged with attempted bribery after placing a roll of $20 bills in the investigating officer's pocket. At trial, Clark requested a lesser included offense jury instruction for the crime of granting unlawful compensation under RCW 9A.68.030(1)(b). *Id*. at 176. The trial court denied Clark's proposed instruction and Division Two affirmed, finding "there simply is no evidence supporting an inference that granting unlawful compensation was committed." *Id*. at 176-77. Specifically, the court held that there was no evidence that Clark paid the deputy for advice or assistance. *Id*. at 177. With little analysis, the court applied the canon of ejusdem generis and held that the general term "other transaction" was restricted by the more specific preceding terms of bill, contract, and claim. *Id.*

It is unclear why the court in *Clark* applied ejusdem generis to the statute or whether it first determined the statute was ambiguous. It is also unclear how the court characterized "bill, contract, claim" to conclude that "enforcement or lack thereof of vice

or licensing laws" was not a transaction contemplated by the statute.[6] *Id*. at 177.

Nevertheless, the court's holding is not dispositive in this case.

First, as stated, "ejusdem generis is a canon of statutory interpretation" that applies "only when a statute is ambiguous." *Muckleshoot Indian Tribe*, 112 Wn. App. at 726. And here, Tarver agrees the statute is unambiguous.[7]

Even if we were to apply the canon, it does not change our conclusion. Tarver contends that the specific terms "bill," "contract," and "claim" pertain exclusively to business or financial matters, thereby limiting the meaning of transaction to only those types of matters. However, it appears the "bill" originally contemplated by the legislature was a legislative bill, not a financial bill or invoice. 1976 Op. Att'y Gen. No. 6. Although this may not have been the only meaning "bill" was intended to confer, it

---

[6] We note that although RCW 9A.68.030(1)(a) and (b) share similar language, the differences may be meaningful to *Clark*'s holding. In RCW 9A.68.030(1)(a), the provision that Tarver was charged with violating, a public servant is prohibited from requesting "compensation for advice or other assistance in preparing a bill, contract, claim, or transaction regarding which he or she knows he or she is likely to have an official discretion to exercise." Whereas subsection (1)(b), applicable in *Clark*, prohibits a person from offering "to pay compensation to a public servant for advice or other assistance in preparing *or promoting* a bill, contract, claim, or *other* transaction regarding which the public servant is likely to have an official discretion to exercise." (Emphasis added.)

[7] We decline Tarver's request to apply the rule of lenity for the same reason. "[T]he rule of lenity applies only where a statute is ambiguous, and a statute is ambiguous only if it is 'subject to more than one *reasonable* interpretation.'" *State v. Cyr*, 195 Wn.2d 492, 505, 461 P.3d 360 (2020) (quoting *In re Pers. Restraint of Cruz*, 157 Wn.2d 83, 88, 134 P.3d 1166 (2006)).

tends to disprove Tarver's theory that ejusdem generis constrains transaction to mean a business or financial transaction. Otherwise, Tarver makes no attempt to define the terms "bill," "contract," or "claim."

We also disagree with Tarver's argument that parent-child visitation resembles enforcement of the law and is therefore not a transaction under *Clark*. In *Clark*, the defendant did not pay the deputy for advice or assistance regarding a transaction; rather, she was attempting to bribe the officer to refrain from enforcing the law against her. While her act fit within the bribery statute, it does not fit within the offense of receiving or granting unlawful compensation. *See* RCW 9A.68.030(1). There is no readily apparent way to fit enforcement of the law or declining to enforce the law into the same framework. In other words, declining to enforce the law is not a communicative activity that a deputy could advise or assist in preparing.

CONCLUSION

We hold that the trial court did not err in its interpretation of the terms "compensation" and "transaction" as used in RCW 9A.68.030(1)(a). Tarver's request for sexual contact was a request for compensation in exchange for his advice and assistance in preparing a transaction, which included R.J.'s visitation with her children and his influence in the dependency action. Tarver concedes that if the superior court's interpretation of these two terms was correct, the evidence is otherwise sufficient to support his conviction for requesting unlawful compensation. Wash. Ct. of Appeals oral

16

argument, *State v. Tarver*, No. 40603-2-III (Mar. 10, 2026), at 3 min., 03 sec. through 3 min., 18 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

Affirmed.

_____
Staab, C.J.

WE CONCUR:

_____
Hill, J.

_____
Murphy, J.